Page number 17-1735 et al., American Society for Testing and Materials et al. v. Public.Resource.Org, Inc., et al. Mr. Sheridan for the et al., Mr. Verrilli for the et al. Page number 17-1735 et al., American Society for Testing and Materials et al., Inc., et al.  Page number 17-1735 et al., American Society for Testing and Materials et al., Inc., et al. Page number 17-1735 et al., American Society for Testing and Materials et al., Inc., et al. Good morning, everyone. Corinne McSherry for Public.Resource. May I speak to the court? The court question in this case is whether a private party can use copyright to prevent a nonprofit from helping the public access and share the law. And the answer to that question is no, for at least three reasons. First of all, as a matter of public policy and longstanding judicial consensus, the law is not copyrightable. And that applies whether it's a judicial opinion, a statute, an ordinance, a regulation, or as the Fifth Circuit tells us, a regulation that's been incorporated by reference into law. So is it your position that any standard incorporated by reference loses its copyright protection? Or does it depend standard by standard depending upon whether or not the standard imposes mandatory obligations or simply, you know, as the courts in the Red Book and the AMA case found, you know, simply set standards or provide options for others? In other words, what is your position? Is it everything automatic, everything incorporated is the law and can't be copyrighted? Not precisely, Your Honor. I'm sorry, what? Our position is that anything that has been expressly incorporated into law and made mandatory, as has every standard at issue in this case, usually after an extensive notice and comment period where there's ample opportunity for parties to come in and talk about whether that was the appropriate regulatory measure. That's helpful. So it has to be, in your view, for it to become a law and therefore subject to copyright, it has to impose mandatory standards, right? It can't just be sort of a random site to an external piece of information. That's correct, Your Honor. Okay, so let me just ask you about a couple of these. For example, okay, so ASTM D121793, okay? It provides an alternative method for complying with the Green Area. That's what it does. It doesn't tell you which one you have to do. It just gives you alternative methods. Now, is that mandatory? Because that standard has followed that process of being expressly incorporated into law, it is part of the law. You might think of this as if a tax code provides multiple ways of complying with one's obligations, it's a penalty, but all of that is part of the code and all of that is part of the law. So can you give me an example of a standard that wouldn't be considered, quote, the law if incorporated by reference? I know your position is that every one of these, well, every one of these falls into the category, but give me an example of one that wouldn't. So I think the CCC case actually provides an example of one that wouldn't be, and that's a situation where we had the Red Book simply referred to as an option. It was not expressly, there was no language where any agency or government entity expressly incorporated the Red Book into law and followed that language. There was no comment period or anything like that. I understand. I don't want to push you beyond the position you want to take. I just want to be sure I understand. Of course. I understand that argument from a due process point of view, but you also make a First Amendment argument, right? And I was curious to know whether, like, for example, on these standards that aren't mandatory but give choices, your position might be, well, it can't be that for people, interested parties, to try to encourage the agency to change its position and go to Congress to get the position changed. It can't be that they don't have free access to the standards and free access to duplicate them as much as they need in order to pursue their First Amendment interests. So the way that I would approach that hypothetical situation, I think the easier path forward in that situation would be to look at not just the First Amendment, but look at fair use. And I think their party might have a strong fair use argument that they should have the ability to share documents that have been referred to in regulations in order to understand those better. And I think in an appropriate circumstance, you could find that use to be a fair use. I think when you're talking about regulations that have been made mandatory, you have a combined strong and even stronger First Amendment and due process interest, and they join together. Of course, the SDOs argue you don't have standing to raise a due process argument. I think the SDOs are misunderstanding how we are raising due process. What we are saying as copyright defendants is that you need to follow Howell and Banks and Wheaton and interpret copyright law in light of the due process concerns that all of those courts have recognized. Due process concerns that have been informed copyright law itself and our Edicts of Government Doctrine, the Merger Doctrine, and Section 102B. So we are not raising a due process challenge as such, but explaining how we need to understand copyright law. So if you have a regulated party, a party that is subject to sanction for violating one of these regulations or codes, it puts you in a little bit different position vis-a-vis the standard than the Supreme Court opinion or something that is generally applicable to everyone. That's correct, Your Honor. We're a party that has been accused of copyright infringement for making it possible for others to exercise their due process rights to access the law. That sounds more like First Amendment than due process. I think these are really inextricable and I think here of the situation discussed in our briefing involving the Supreme Court of Indiana, where the Supreme Court of Indiana went looking for a standard, not one of the standards that issue in this case, fortunately, but ultimately couldn't find it. Now that wasn't a party that was, that was a court that was charged with interpreting the law and understanding the law. And they too, that court also had a need to access the law and was unable to do so at first. Ultimately was able to because the standard at issue was not one of those that was enjoined in this case. So I think that the, I guess I view the due process and First Amendment concerns here as being really inextricably linked. Why isn't the better way to analytically look at this is to look at fair use first? Even assuming that there is copyright protection still, that in the context of a standard that is incorporated into a statute of regulation that is binding on the public, that to the extent someone wants to reproduce that statute of regulation and reproduce solely the text, not the trademark of the standard that's been incorporated by reference, that's a fair use. The copyright owners don't lose all of their protection. We don't have to reach these constitutional arguments, but to the extent that the district court needed to enter an injunction, which is what we're reviewing, and an injunction that's known broader than necessary, that that's what the district court should have done. Well, thank you for bringing me to my second point. I do think that the court can find in our favor on the first point, but if not, absolutely, the use in question is a lawful fair use. If you look at the purpose of the use, it's a transformative, creating an archive, a universally accessible archive for public benefit. Suppose we don't agree that it's transformative. I'm sorry? I said suppose we don't agree that it's transformative. I mean, you're welcome to make your argument, but assume for purposes of the answer in terms of this question, we don't think it's transformative. How do you make your argument? Okay. Well, I think when you look at the purpose of the work, you look not just at whether it's transformative, you also look at the public benefit, and I think here we have tremendous public benefit. There are also numerous cases that have concluded that while transformativeness is important, it's not the only aspect of the factor one that you should consider. In addition to public benefit, you look at whether the use was commercial, and I was quite surprised to read the district court's opinion and have a district court conclude that my client's purpose was somehow commercial. It's a nonprofit making an archive of law available for free and making it more accessible to the world than it would be entirely for free. We can then turn to the second factor, which I think is important here when you're talking about legal facts. Factor two becomes quite important, which has been recognized by various cases, and I think the nature of the work cuts squarely in favor of my client. With respect to the third factor, of course, it is true that my client reproduced the entirety of these standards as they were incorporated into law because he needed to do so, public resource needed to do so, in order to have a complete archive, which is the goal. Finally, on market harm, there was no evidence whatsoever in the record of any market harm that could be attributed to anything that my client did. There were a couple examples where sales of the standards dropped, but they were when new standards were coming out, and the plaintiffs themselves admitted that when new standards are coming out, the old standards tend to not sell as well. In one case with ERA, they took it off the market altogether. Then the final thing I would say around fair use is, again, when you're looking at fair use, you look at the factors together, and then you look in light of the public interest and the greater purposes. We have a situation where, absent fair use, absent this archive, the plaintiffs in this case have been very clear that they believe they have the ability to take these standards off the market altogether and would like to do so. They believe that they have the right to set the conditions for access to the law, whether it's incorporated by reference or not. What do we know about market harm from the aftermath of the Veek case? Well, what we know is that there has been no market harm. As far as we can tell, the standards organization insisted that the sky was going to fall. If that decision was upheld or wasn't reviewed by the Supreme Court, that didn't happen. They're doing very, very well, and there's been no market harm whatsoever, which makes sense, because where they actually make most of their money, to be honest, is from newer versions of the standards, not the ones that have been incorporated into law. And they benefit tremendously from when their standards are incorporated into law. They have educational seminars. They sell annotated notions. They train people up, and they tell people, do you want to know how to comply with California law? Come to us. We can tell you. Why? Because they wrote the law. Let me take you back. Okay, I just wanted to go back to my basic question about whether your position is that all of these standards that were part of the summary judgment proceedings fall into the mandatory category or not. I just want to understand your position. Take the 1999 educational standards, okay? They're used just to determine eligibility for grants. So does that fall into your category? It's not mandatory. It does fall within my category for two reasons. One is that it, too, the 1999 standards, in their entirety, were incorporated by reference into law, just like every other one. Right. When I asked you the question earlier, you said that wasn't enough. It had to also be mandatory or impose obligations. Well, they are mandatory in the sense that you have to comply with them. And if you represent them… Only if you're seeking a government grant. Well, but if all kinds of people engaging in any kind of testing with respect to the government have to comply with those standards, and if they don't and they misrepresent that they have, they're subject to civil fines and penalties. In addition, the 1999 standards were integral to the 2010 educational regulation reform. Engaged by the Obama administration, it was not simply an offshoot. It was actually a fundamental part of that entire regulatory system. Don't worry. I think we have some more questions. Yeah, so you haven't challenged the proposition that when a private entity promulgates either a model code or a set of standards, that that can be copyrighted prior to the point when it's incorporated by reference? If it's otherwise copyrightable prior to incorporation by reference, then it's copyrightable. Do you have a position on whether this kind of material is copyrightable? I think it depends. We were concerned below that the standards at issue really were so factual that copyright protection was minimal at best, but we haven't raised that argument. Once you assume that the standards were properly copyrighted when they were created, then it seems to me there's a pretty good argument against you that the statute addresses how a holder of a copyright can be divested of his or her copyright interest and incorporation by reference is not on that list. With respect, I would disagree with you, Your Honor. I think that what we have is 200 years of tradition that says that law is not copyrightable. I think you could think of it this way. If a lobbyist drafts a law, as often happens, and submitted it to a separate committee for the law. You don't think that really happens, do you? I think that if that lobbyist came forward later and said, well, it was initially when I first wrote it, it was copyrightable, and therefore I retain a copyright interest in that document now that it's been made into the law. I think that we would find that preposterous, but that's not so very different from what we're talking about here, particularly given that we have a record where the plaintiffs don't just have their standards incorporated haphazardly. They know they're going to be incorporated. They draft them so that they can be easily incorporated. We're close to a government official. Some do, some don't, and that maybe gets into the distinction that the Fifth Circuit drew and said model codes are different from voluntary standards that are promulgated for other reasons, and you're asking us to go even beyond what the Fifth Circuit did. Again, I think we have a very strong record in this case that the plaintiffs, every one of them worked closely with government officials to have their standards incorporated into law. Not all of their standards. Understand that. Even if the document is written as a, I don't know what you'd call it, best practices for the industry document as opposed to expressly being written as a model code? But I think for every standard in this case, it was expressly adopted into regulation and was intended to be so in the sense that we have government officials participating in it. I thought from your brief you were advocating for a pretty broad, bright-line rule, and now you seem to be moving towards a position Judge Tatel was suggesting that maybe everything depends on particular facts and the intent of the drafter and so on with regard to particular standards. So I think the bright-line rule and sort of the core rule that we can start with and adhere closely to is if it has been expressly and deliberately incorporated into law. So you can start there. And I thought your position on that was regardless of whether the drafter was exclusively in the business of drafting codes and then pitching them to governments as codes or was a private entity that just wants standard rules for engineers or whatever and they're completely indifferent about incorporation by reference. So thank you for the opportunity to clarify, Your Honor. What I was trying to do was respond to the question of whether what we are advocating for here, whether our case follows firmly under VEC or not. So I'm trying to say what I actually think that the distinction that the VEC court was trying to draw does not actually apply in this case. I have a question for you about the trademark issue and the non-deferred use question. The position in your brief is that you have no way of identifying these standards except by using the trademarks. But why couldn't you just refer to it as the standard adopted by reference in 1823 U.S. Code XXX? Wouldn't that do it? Well, because, Your Honor, what public resource was trying to do and did is reproduce what was incorporated by reference into the law. So the public resource did not want to put itself in the position of making a whole host of decisions of what should count and what should not count. Well, but as a result of doing that, the argument is you run afoul of the trademark laws. Well, I think that the strongest argument about why that's not correct actually starts with Daystar. But the argument about Daystar, this is very different, because here the version of the standard that PRO put online was a degraded version. It had mistakes in it. It was modified for other purposes. And it identified it as class by using the logos. So it was very different from the facts. So with respect to the errors point, Your Honor, I... Isn't that right? I mean, they have a point about that, right? This is not that case. This is not a case where... I mean, in that case, the video, the film was virtually identical. It was identical in all respects. And there was no identifying information to associate it with the author. So I think actually what my client did here is really more akin to, say I screened a public domain movie, and the movie included some movie credits that included some logos that might still be under trademark. Would a trademark owner want to come and bring a claim? I think not. I think that it would be... And especially if they also brought a copyright claim at the same time, I think if they found it was public domain, that would be the end of the case. I think that's what happened here. Assume you think that it's a problem. Couldn't your client do this just as effectively without using the logos and the word marks? Why couldn't you do it just as effectively? I think it would be very difficult to do this without using the word marks because that is how the standards are identified. But you could do it without the logos. You could take the logos off, right? You wouldn't need those. I think my client had good reason for including the logos because he was trying to reproduce them in total. But as we said with the district court, if the court wanted to direct an injunction that applied solely to editing out the logos, at the court's direction, we would do that. My client didn't want to do that as a get-go because he has another purpose of reproducing the law in its entirety. And public resource does not want to put itself in the position of basically editing the law. And that's how it's viewed, editing out the logos. Frankly, I think that whether we included the logos or not, the standards organizations would have brought a trademark claim anyway Well, the question is, who would have won if you didn't use the logos? So, my view again is I think we have a strong argument on the trademark claim at all. The logos, I will concede, are a closer question. And if we walked out of this situation with an injunction solely as to the logos, my client would be satisfied with that. And what about your disclaimers? We are more than happy to modify those disclaimers in a way that makes it runner-in-the-field. My client has no interest in any confusion about this question. I understand. So what you care about most is using the word mark, right? The same mark that's in the Federal Register. Public resource has to use the word mark because that's how they are identified. Can I just take you back to the Fifth Circuit case? Sure. So, I had thought that that court drew a fairly straightforward line between things that are drafted as model codes and things that are drafted as everything else, industry standards, in which case you would fall on the wrong side of that line. So, why am I misunderstanding the line that the Fifth Circuit drew and how you fall on the right side of its line? Sure. So, I think what the VEC court did is it laid out the path for thinking about the problem of incorporation by reference. And it looked to the merger doctrine. It understood, following the Boca case, the fundamental due process problems and discussed those at great length. And it looked to the merger doctrine and also the fact-expression dichotomy as a path for thinking about the quandary that's created when you have a private copyright in the law. And that's the path that public resource tried to follow in making sure that its activities were lawful. Public interest, I mean, sorry, public resource, you know, looked very closely at the VEC case and tried very carefully to follow it and its parameters. The reality of the situation is that there's a very vast amount of material, important material, like the National Electoral Code and the National Fire Safety Code that have been made part of the law. So, my point is that VEC gives the court a path for thinking about the quandary that is the same quandary here as it was in VEC, which is the public policy situation, a problem that's created when you have a copyright in the law. These were not drafted as model codes. Can you give me a sentence or two for the rule of law that would determine under the Fifth Circuit framework when something that doesn't look like a model code should be treated as a model code? When you have a document that has been made into a mandatory regulatory document and expressly incorporated into law, it is the law and has to be treated like any other law under the Fifth Circuit. Okay, but that turns... not on the intent of the drafters when they draft the code, right? That's right. So, that seems to me actually what you're really arguing is not that you fall on the right side of the Fifth Circuit line, but that the Fifth Circuit was wrong to suggest a distinction between private standards and model codes. I think that where the district court, I don't want to say erred, but perhaps placed too much emphasis was on the question of intent. But as I suggested, I think we have a situation here where even if they're not called model codes, they're treated as model codes. Even if the private group never comes to the government  and has no government people involved in the process of developing the standard and is completely indifferent or even hostile to incorporation, your position is once it's incorporated, if it's incorporated into binding law that affects private parties, then it's copyright over. Well, that's correct, but to be clear, that is not how it happens. In practice, all of the standards here were incorporated. Okay, you're right. You're fighting the facts. I understand. Okay. Thank you. Thank you. Thank you. May it please the court, Don Verrilli for Appellees. Public resource seeks to extinguish in one stroke the copyright in thousands of standards that protect public health and safety. There is nothing in the text of the Copyright Act and various principles from the Constitution that justifies that radical step. It would upend the Act's incentive structure for this very substantial and particularly significant category of works and would put at risk the private standard setting, private standard development process on which governments at all levels rely. Can I ask you, I just want to ask you a question, the same kind of question I started with the other side. It's to make sure I understand your position on two aspects of this case. Suppose, in this case, the standards had been incorporated word for word into the Federal Register and therefore the code, the CFR, just like in the... Would you concede then that they're not subject to copyright protection? I have to give you a complicated answer to that at such a table. That's okay. Bear with me, I will. I do want to point out, I understand that that's a hypothetical question because if you look at page 2086, you see the District Court said that none of the standards that are issued here were verbatim incorporated. I think in most situations you're going to find that there isn't a copyright infringement problem, but it's not because verbatim incorporation results in the standards becoming part of the public domain. Very often, there are standard-setting organizations that promulgate model codes, grant express licenses. If you look at the American Law Institute, if you look at the website, you'll find that that's exactly what the American Law Institute does with the UCC. It grants government entities that want to reprint it verbatim a royalty-free license, and then it says that anybody else who wants to reprint it in a book has to enter into a license agreement with us. That all presupposes that copyright is not extinguished even in verbatim incorporation. So the existence of an express license is often going to take care of that. Situations where there isn't an express license, I think there'd be a very strong argument that there's an implied license. Even if a standard, a privately developed standard, that was incorporated word for word into the regulation that had mandatory effects, affected rights or obligations, would still retain its copyright? We think the copyright wouldn't be extinguished, and I do think that the whole federal system is really... So are the regulations, are they somehow different from statutes? I mean, statutes, we all understand, can't be copyrighted. Yes, I think the key difference, and I do think this goes to a really important point, the key difference with respect to this government edict doctrine, it's about the origin. With respect to a statute, a regulation, or a judicial opinion, if it originates with government actors, then it's not subject to copyright. But the reason, as the Supreme Court said in Banks, because in the case of a judicial opinion, the judge, the court said, is in no sense the author. So how does it make a difference if the result of the incorporated standard is binding on people? Imposes mandatory... What difference does it make where it originated? It might mean that the government has committed a taking, it has to pay for it. But why would you... What would allow a private party to put it in its baldness? Prohibit public access to a law. So, first, I do think... I'll answer your honest question directly, but there really is no issue in this case about prohibition or even restriction on the public's access to the law. All of the standards at issue here are widely available, and there's no evidence in the record that anybody has ever had any problem finding any of these standards, and I think that makes sense. But with respect to your honest question, it goes to the way that copyright laws function here, and I think it's also very important to take the incentive system that copyright establishes into account. The reason that statutes that originate with being drafted by the government or regulations or judicial opinions don't qualify for copyright is because there's no author in the sense that the copyright law is recognized. That's what Banks says. The judge is in no sense the author because... Well, that's half of Banks, right? The other half of Banks is that law is necessarily public, and that's always been understood to cover at a minimum statutes and judicial opinions. Right, but I... So take the case of the statute. Suppose the American Law Institute drafts a model code or a restatement or whatever, and a state legislature writes those words into a state statute. Is it really your position that members of the public can't freely copy that statute? I don't think the court needs to answer that question to resolve this case, but I will answer the question. I don't think the court needs to. Assume that I think there's no difference between positive law enacted through statute and positive law enacted through regulation. Well, but I think the American Law Institute certainly thinks that it retains a valid copyright in exactly that situation. That's why it offers the royalty-free license. But then it also says in its policies that any private entity that wants to republish the statute itself has to get a license from us and pay us appropriate loyalties. And I would submit that is actually the background norm that operates here in this area and has for a very long time. There is a difference, and there always has been a difference, between laws that originate with the government, and be it codes, standards, whatever it is, that originate with private parties, private entities, and are original works of authorship that obtain copyrights at the moment that they are created. Those have always been treated... But I think all of the briefs acknowledge that pretty much every local government incorporates either the National Electrical Code or the International Building Code. I think your brief discusses how the District of Columbia has incorporated one or the other of those. So is it your position that if the District of Columbia printed the text, published the text of that building code, as part of the regulation that incorporated it, without a license, that they would be in violation of copyright? I think if there were no express licenses, there would still be a good case under copyright law for there being an implied license in that situation. But I do think it's important to recognize that it's not an accident that the federal government ubiquitously and almost always at the state and local level they incorporate by reference. The reason that government entities do that is because they are trying to respect the copyright interests of the drafters, of the creators of these standards. And the reason they do that is because it is very important to maintain the incentive structure to ensure that these non-profit organizations are able to earn the revenues to continue to engage in this kind of private standard-setting activity on which the governments rely. Because if it's not there, then the government's got to take that law on itself. You know, I saw that in your brief. Don't these organizations have a... You think they're primary... They're not into this to make money. They're into this to get their standards incorporated into law. That's what their incentive is. Well, I think their incentive is... That's what they want. Are you saying that their reason for being is to earn money on printing these things? These are non-profit organizations. They exist to serve the public interest. Yeah, right. And the way in which they do so is by putting the effort in to bring the expertise together to create these standards and codes. Of course, one of the goals is to have them incorporated into law. But it's not at all the only goal. And I do think that that's very important to understand that these standards have great private utility as well as public utility. But even if it were the case that the principal goal was to have these standards adopted by governments by reference, that doesn't change the calculus. It's a statutory matter. These are original works of authorship that have protection under the copyright laws. There's nothing in the statute that extinguishes those rights upon incorporation by reference. And it would be a really terrible policy judgment to decide that incorporation by reference extinguishes because you're going to remove the economic incentive to create these standards. But Congress made a judgment to create a fair use defense under Section 107. So why isn't it fair use for someone as part of reproducing the text of a regulation if there is a standard that's been incorporated by reference to reproduce the text of that standard? Why isn't that fair use? Well, Your Honor, I think there might be certain particular circumstances in which it would be a fair use. But fair use can't possibly... For example, in a scenario discussed in the earlier part of the argument in which a particular individual or group wants to advocate for a change in the law or advocate about what the law means. Of course, in those individual circumstances, using the text of the law of an incorporated standard would be a fair use. But that's vastly different from what we have here. I want to make a couple of broad points about fair use, but then I think it's important to walk through the specific factors in the statute. And with respect to the broad points, fair use has never been understood and really can't be understood to be a substitute for legislative revision. And that's essentially what's happening here. These are original works of authorship. There is nothing in the statute that says that they're categorically extinguished upon incorporation by reference. But the fair use position that my friends on the other side are advocating is just that. That it's a categorical matter incorporation by reference extinguishes. And I just think that's the job for a legislature, for Congress, to balance these competing interests, not for a court and fair use analysis. Second general overarching point. If you look at the specific kinds of uses that Congress identified in Section 107 that constitute fair use, scholarship, criticism, commentary, etc., there's nothing like what's going on here. Now, with respect to the four fair use factors, I think it's quite clear that this is not a transformative use in the sense that the Supreme Court defined it in Acuff-Rose. And what it is is a 100% substitutional use. What they want to do is take our standards, which we make available for sale, and make the exact same thing, 100% of it, available for free. It's just a substitute. That's all it is. It's just a substitute for what we make available. What about the second factor? So, in Factor 2, I think the district court had it exactly right that the nature of this copyright expression makes it particularly important to preserve its copyrighted status here against this kind of infringing use. Well, the argument against that is that now that they're incorporated, they're now the law, so they're like fact. So, with respect to the question of fair use, I'm happy to address that question of whether under 102B these are uncopyrightable facts. I think that's completely wrong. Let me address that directly, and then I'll go back to the fair use. Well, no, that's my fair use question. Yeah, I would focus on the difference between fact and fiction. There are no less, but... I didn't mean you to go back, right? So, with respect to the nature of the copyrighted work here, I think the district court had it exactly right. There's a huge public interest that is served by maintaining the incentive structure for the creation and updating of these kinds of work that goes beyond the normal public interest in the incentive structure of the copyright laws, precisely because government entities, federal, state, and local rely on these so much. So, I do think the district court had it exactly right with respect to that. So, this factor, too... Let me just ask you a broad question about this. So, am I wrong to... Would I be wrong to say that at its core this case turns on whether these standards incorporated by reference are or are not the law? If they're not, then it seems to me you win on all these issues. That is, whether it's copyrightable, whether the copyright lasts, whether there's fair use, merger. It seems to me if they're not the law, as you argue, then you win. If they are the law, then assume we don't agree with you. Assume we think that they are. Particularly that an incorporated standard that imposes a mandatory... Like, for example, a standard... A situation where, say, the Clean Air Act says regulated parties can comply with this provision by following the technical rules in Standard X. And that's the only way. Now, let's assume we think that is the law, that that, as the Federal Register Office said, it has the rule of law because it's been incorporated. Now, if we think that, then what do you think about these series of issues we've been discussing? Number one, does it lose its copyright? Or, number two, in the alternative, is it fair use? So, here's how I'd answer Your Honor's question. That if these provisions weren't law, they don't get the first base. I agree. Right. That was my question. But even if one considers these provisions incorporated by reference to be law, that's the beginning of the analysis, not the end of the analysis. Even if they are law in the sense that they're now binding, as some of them are, the question remains whether there's anything in the Copyright Act that extinguishes the copyright that validly existed in those standards when they were first fixed in tangible media. And there's nothing in the statute that extinguishes the copyright. The Federal Government, in particular, behaves in a manner that indicates that they very clearly don't think that the copyright is extinguished. In fact, if you look at the reason the Federal Government says it incorporates by reference rather than verbatim is precisely to preserve the incentive structure of copyright law so the Federal Government can continue to rely on the private standard-setting organizations and the incentive system that the copyright law creates for them to do what they do. And so there's nothing in the text. I mean, they make this argument about 102B, but I think it's quite clear that 102B applies only at the time that the work is fixed in tangible medium and that it functions in tandem with 102A. 102A says you get copyright in an original work of authorship and 102B says that the copyright that subsists in that original work doesn't extend to the underlying ideas, et cetera. But that's not an extinguishment provision. It certainly doesn't apply many years after the fact on a textual basis. And so then I do think... I apologize. Let me just finish the question. So do you have basically the same answer to the fair use? Even if it's the law, then your answer is the same. Is it the same? I think the answer is that you have to work through the use analysis. Working through the fair use analysis, of course you take into account the fact that this has been incorporated by reference into the law. But even with respect to that, I think the more powerful consideration cuts in our direction in that the whole system is set up so that private standard-setting organizations, private nonprofits pursue the public interest, create these standards, and government can then rely on those standards rather than try to develop all that expertise in-house, which is what they would have to do if you killed off the system by extinguishing copyright whenever anything is incorporated by reference. So with respect to the nature of the work, cuts in our favor. With respect to the third factor, no doubt 100% cuts in our favor. Now the fourth factor, this issue of effect on the market... Wait, why does the third factor cut in their favor? Because they take 100% of the works. No, but if it's the law, isn't that the only way they can do it? Well, it's the only way they can do it if they can do it. But the question is whether they can do it. Well, we're fair use now, right? We've moved beyond the copyright question. Right, but the question is whether taking 100% of the law... Well, if it's a one-sentence law, and they use the whole sentence, the only way they can repeat it is to use the whole sentence. If anything's true, it's 100%. I guess what I'm saying, Your Honor, is I suggest that the right way to think about it is to refer back to the reasons that Congress gave for recognizing a fair use privilege, which is it's a privilege, it's an affirmative defense. It exists for particularized uses. You want to make copies for use in your classroom. You want to criticize the law so you quote it. Those sorts of things. Of course we agree that there's fair use in all those... What is the material difference between making copies to teach students and making copies to teach the public what the law is? If Harry Homeowner is being told by some contractor, well, the building code says, you know, I got to tear all of this down and rebuild it, and Harry Homeowner wants to know what the building code really says, why isn't it just as educational for that building code to be reproduced in its entirety so that that member of the public can understand what it means? Two points on that, Your Honor. First, that homeowner can go online and find the building code in read-only format on our websites. It can do that. So it's not like there isn't access to it. That's nice that your client, in its good graces, is doing that, but why shouldn't he be able to go to the D.C. government's website and find the same thing? Well, if the D.C. government had reprinted it verbatim, he would be able to, but again, I think that would be covered by a license. But the problem here is, fair use is an equitable document. It's an affirmative defense, and it seems to me that if you want to rely on a lack of access, you've got to demonstrate a lack of access in order to justify fair use, and there would be nothing. What says that there has to be a proof of lack of access before fair use is a legitimate defense? What case says that? I guess what I'm saying, Your Honor, is that if your argument is that this should be considered fair use because it's necessary for people in the public to gain access, then in order to establish that it is an affirmative defense, they've got to show a lack of access, and they didn't do that. But I do think there are more particularized indications in the statute itself that go to Your Honor's question about teaching. For example, I think what I would suggest is to look at section 110 sub 2 of the statute, where Congress specifically went through what kinds of digital company and digital availability is allowed under the Copyright Act for making materials available for teaching purposes. There are all kinds of restrictions, there are all kinds of limitations. Once again, I do think this is another situation where my friends on the other side are trying to invoke fair use to swap out the judgment, the balancing of policy interests that Congress made and substitute their own. That's a legislative judgment. It's not the kind of thing that should be accomplished under fair use. With respect to the effect on the market, several things about that, if I could. First, again, this is an affirmative defense. The burden is on them. They have to make a record showing no adverse effect on the market. They introduced nothing. So they've established nothing with respect to that factor. Second, we did submit expert declarations showing that we would suffer very substantial erosion of revenues if their practices continued. They did not rebut those. Third, with respect to your honest question about the VEC case and the effect on the market after VEC, a couple of things about that. Of course, a key point about VEC, and Judge Katz has raised this earlier, is that the Court was very careful to limit its holding. And if you look at pages 803 and 804 of the VEC decision, if the Court doesn't mind, I'm just going to quote it because I do think it's highly relevant to this exact question of effect on the market and fair use. The limits of this holding must be explained. Several organizations fear that their copyrights may be vitiated simply by the common practice of governmental entities incorporating their standards and laws and regulations. And then it cites the OMB Circular A119 and then says, this case does not involve references to existing standards instead it concerns the wholesale adoption of a model code. Now, the reason the Court put that provision and said that is because we all came in as amici in that case and said, hey, you're going to have this effect on our standards, and the Court said, no, we're not. And so the system has continued to operate in the normal manner. The question whether the reasoning in the first part of the VEC opinion, which is the law is in the public domain, whether that reasoning covers the private standard setters is at a minimum open to debate. And when the Solicitor General opposed cert in, is it VEC or VEC? VEC. When the SG opposed cert in VEC, he told the Supreme Court that even if the Fifth Circuit decision were understood to cover the private standard setters, this prediction that the sky will fall is unrealistic. So why shouldn't we get some weight to the views of that august government official? I'm shuddered to say this, but the Solicitor General is not always right, Your Honor. And I actually do think there's a point I'd like to make, and I have to go beyond what's been cited in the record, but it is public information if I can. In the Oracle case, which we cite in our brief, the Federal Circuit Oracle case, which was a question about whether 102B analysis applies only at the time, the initial moment that copyright is granted, or whether it provides continuing authority. Google saw cert in that case. The Supreme Court asked the views of the United States. There is a brief by the Solicitor General in that case which says about 102B exactly what we are saying about 102B here, which is that it applies at the initial stage only. So that eliminates the only statutory. That would be a disagreement with the majority opinion in the Fifth Circuit on that issue of 102B. That's the only statutory basis for concluding that the copyright is extinguished. Now with respect to the broader question of whether law is invariably in the public domain, a couple of things about that. First, I think as Your Honor's question pointed out earlier, you can decide this case without expressly disagreeing with Beck because the standards here are on the other side of the line, of the Beck line. That said, we don't think Beck is correct about that. We think that the norm that Beck is pointing to drawn from the Banks case is a norm that says that when the government creates in the first instance, there is no author, and therefore there is no original work of authorship within the meaning of the act. But when there is a valid copyright and a private... Banks was a state judge, right? Correct. And the state law specifically not only authorized, but required the reporter to try to get the copyright, which would seem to suggest the state wanted their officials to get additional compensation, not simply their salaries, but whatever value the Ohio reports would have had. Yes, that's true, Your Honor, but the way in which the court in Banks analyzed the case as I read it, is it said we're interpreting the copyright laws in effect now, the federal copyright laws. Interpreting the federal copyright laws. But it has to be something more than simply the incentives on members of Congress and federal judges is sufficient, and they shouldn't get extra compensation for their official duties. Because Ohio wanted those officials to get extra compensation. I guess what I would say about that is that the court interpreting the copyright laws as they existed then made a judgment, and it said it described the judge as being in no sense the author for copyright purposes. It said in that situation, whatever the state may want, as a matter of federal copyright law, there's no author, and therefore there's no original work of authorship. That can't answer the question here where there is an author, there is an original work of authorship, the copyright is valid, and the question is whether it is extinguished. And you have to answer that by reference to the 1976 act, and that's a judgment for Congress to make. Can we talk about 102? The list of things that can be copyrighted is original works, including literary, musical, dramatic, piano mimes, etc. And the list of things that can't be copyrighted include ideas, procedures, processes, systems, concepts, principles, etc. If you ask me, is a code of law more like the first list or more like the second list? It sure sounds to me it's more like the second list. Respectfully, Your Honor, I don't think that's the way one reads the statute. I think the invitation brief of the United States and Oracle explains this as well. The way the statute works is different. Is it cited in the material somewhere? As I said, the government's invitation brief in Oracle was not, but the Oracle case itself is cited in the article we just discussed. So the way the statute works, the way 102 works, 102A and 102B work together. 102A says copyright shall subsist in an original work of authorship. And 102B says that which subsists shall not extend to these things. It's not creating categories of things that can be copyrighted and categories of things that cannot be copyrighted. Well, sure it is. It's saying categorically that ideas, procedures, processes, systems, principles, concepts can't be copyrighted. But the particular expression of each of those things cannot be copyrighted. Okay. So when a standard setting organization suggests in its code, whatever, the speed limit for this kind of road should be 55 miles an hour and for that kind of road should be 65 miles an hour. What's the expression that's being protected as opposed to just the judgment about what the standard should be? So I suppose one could make, in the case of some standards, I really don't think it applies to the standards at issue here, that there's a lack of originality and, therefore, under 102 qualify as an original work. But that's the way one would analyze the question that Your Honor is posing. I just read it as the group says, whatever, the speed limit should be 55, or if you go into the hospital for such-and-such procedure, you should stay a minimum of three days and such-and-such four days and so on. What's important is the idea of where you're setting the standard, not the particular words, whether they say must be three days or shall be three days. But the particular expression of the standard is what is afforded copyright protection. What that means, and what 102B operates to say, that doesn't mean because you have said that you practice this, that the way to do this is X, that nobody can do X without getting a license from you. That's what 102B is trying to cover. And it also means that because you have a copyright in the way you said do X, you can't invoke your copyright to prevent somebody else from saying do X with a different form of words, a different form of expression, or say don't do X, do something else instead. That's what 102B is about. And again, my friends on the other side have not made any argument of this nature in this case. That would all go to the question of whether these are original works of authorship in which a valid copyright vests when fixed in a tangible way. But they are. They do argue whether law can fairly be described as ideas and procedures and concepts and so on. It doesn't seem to me that's textually a stretch. But I do think in a sense, but I think the problem is in the following sense, that at the moment that these codes or standards were created by private entities, they were original works of authorship entitled to a copyright. Now that copyright doesn't extend to the underlying idea that it's a good idea to have electrical safety standards. It doesn't extend to the things that 102B says it doesn't extend to. But it exists. It's a valid copyright. But it doesn't extend to, let's stick with Judge Katz's example. If the standard said you have to stay in the hospital for three days, the defendant here could have put that on their website, right? The standard said three days. Your objection just isn't they copied your version of it. Correct. That's correct. That they copied the standard. And so they can certainly comment on it. They can say it in different words. They can do all those things. I'm not an expert in copyright, but I just am having a very strong intuition that what is important about that is the three days and not the precise words through which that standard is expressed. I appreciate that, Your Honor. Tell me why I'm wrong. Because I think that what you have to think about it, again, temporarily. At the time that these standards were created, copyright was validly vested in them. And what copyright validly vested in was the expression that the entities chose in order to articulate these standards. There's a valid copyright in that. At the moment it was created, there's no argument that the provisions of 102B that says that that copyright which subsists in the original work of authorship shall not extend to the things listed in 102B. There's no argument at that moment that there was no copyright because you were doing one of the things, extending to one of the things, that 102B says you can't extend to. They haven't made the argument, but I'm not sure why it would be obviously wrong. Suppose the standard is just a list of hospital procedures and number of days you have to stay in the hospital and it's just two columns. In a particular case, the expression has to be original to be copyrighted. So in a particular case, somebody might be able to make an argument about a particular standard that's not original. I don't think you can make the argument about the extraordinary body of work that's at issue here. But that's the kind of argument you have to make. And it seems to me that that really, but to say that as a categorical matter, from the moment of creation, not incorporation, but from the moment of creation, that these kinds of standards and codes are not eligible for copyright in the first place would be an even more profound transformation than my friends on the other side are asking for. At least that's not the way I was reacting to this line of questioning. What I was curious about is, so a lot of these standards are highly technical. They provide extremely technical steps for, say, measuring a particular type of oil to be sure that it complies with federal standards, right? Yes. And what the defendant here has done is to reprint your version. Now suppose instead of reprinting it, suppose they didn't use the logo, suppose they didn't use the word mark, suppose they didn't use the exact words, but they wrote a document that's comparable in length and said, here's what the standards are referred to in a particular code require. And they described in detail each of those requirements for measuring the oil content. That would not be a violation of your copyright, right? It would depend on the particular circumstances, but I think it would depend on just how close it came to the verbatim copying. To the extent there's a significant difference, then there's going to be a strong argument that they're not violating the copyright in the first place. But by significant difference, you just mean writing it in a different way. They can use the precise standards, right? They can describe the standards using different language. What they can't do is reprint the code because that's what's copyrighted. But suppose it's supposed to go back to Judge Katz's question. You have to stay in the hospital for three days. Can they not use three days? No, I think they could describe the fact that the standard says three days, but I can't. More than two, less than four? Is that what they'd have to say? No, I think they could say three, but I guess the problem here is the suggestion that these standards don't qualify for— No, that's not my question. I'm intrigued with your point here that the defendant could have accomplished everything at once simply by summarizing what your standards do, and I want to know whether that's really true. I mean, if they really did it—because you've read these. They're highly technical, and if they had just written using their own words but ended up repeating exactly what the standards are because that's the only way to do it, that they wouldn't have been subject to a copyright suit. I'm not trying to dodge the question. I just think it's very hard to answer at the level of abstraction. You'd have to look at what they did and how they did it, but I think that it's not going to be invariably the case that it's a copyright violation. Of course, that's not what they did, and I really think the critical, critical point here is that we have a longstanding incentive structure in place that government at all levels relies on to ensure that there's adequate funding in these nonprofit organizations that create and update these standards, and whichever way you cut it, if you agree with my friends on the other side, under 102, under fair use, under this idea of a background norm, then what you're going to be doing is upending that incentive structure, upending it, and replacing it with nothing, and I think it's a critical— So why is that the case? Suppose we agree with you that the copyright was validly created at the moment the standard was written, pre-incorporation, right? But we also think that the law has to be freely accessible in the strong sense of that proposition. Why isn't the way to harmonize those two to say that the government might have affected a taking when it incorporated—it borrowed the private work that your clients created, and it has lots of value, and the government had great reasons for doing it, but they're freeloading off of someone else's efforts, and that's a classic case under takings law where the public should just pay for that. I don't think takings can be the answer, and I think one way to think about why that's the case, and several points I want to make about that. If I could, I realize I've been up here a long time. But I think one key point about it is it's not just the federal government, of course. It's every state government, every county government, every municipal government. So let's say Montgomery County incorporates the National Electric Code by reference, and that taking these uranium deposits occurred. Is Montgomery County—at that point, under the theory of my friends on the other side, that the code is now free for everybody in the universe to copy without worrying about infringement. So is Montgomery County on the hook for the entire lost value, for the whole thing to measure that? What if it's—how do you decide the difference between Montgomery County and Savoy, Texas? Savoy, Texas is one of the towns that issued—that's a town of about 800 people. They incorporate the National Electric Code by reference, and they're going to be liable for a taking because now everybody in America can freely copy it because they've incorporated it by reference. That's just a totally inadministrable system, and we've got to go to state court all around the country. We won't even know a lot of the time which municipalities and counties have incorporated our standards by reference. We do our best to keep track, but we don't have ubiquitous knowledge about that. And I think what this goes to is a critical point. As I started to say earlier, they're really putting this court in an all-or-nothing position here. They're saying copyright's extinguished, and then what? And I think that if Congress had really intended that copyright be extinguished when a standard is incorporated by reference, you would see some mechanism in the Act itself, analogous to the kinds of compulsory license mechanisms that Congress has put in place in other situations to ensure that there's fair compensation to the nonprofit standard-setting organizations. But there's no indication, there's no evidence that this question ever came to Congress's attention when it passed the Copyright Act? There isn't specific evidence that there is, but there is a very longstanding practice, and I do think that the 1995 statute, the National Technology Transfer and Enhancement Act, is really quite relevant here. That's a statute that instructs federal agencies that were never practicable to incorporate these private standards by reference. Same question. When Congress passed that, was it aware of the copyright issue? So the answer is there's no reason to think it was. At that point, the Vette case hadn't been decided, so there was, at that point, literally zero law suggesting that there would be any issue with respect to the copyright. But I think if you take a half a step back and think about it, that Congress is making a judgment here that it is strongly in the national interest to rely on this private standard-setting process. And it's inconceivable that they would have done so and therefore encouraged the federal agencies to adopt as many of these standards as they could feasibly adopt. It's inconceivable that they would have taken that step with the knowledge that taking that step would result in extinguishing all the copyrights that they're telling the federal agencies that they ought to rely on. They would have killed off the very system that they're saying the federal government ought to rely on. So while there isn't, you're honest, correct, there isn't any specific evidence that they considered this specific issue. It's just completely incompatible with what they did. You said earlier that in response to my question about, well, what if the District of Columbia wants to publish the National Building Code or the National Electrical Code, and perhaps there's some sort of implied license, then if it's not fair use for anyone to publish the standard, then why isn't it fair use at least for the government to do so? It might be, Your Honor. I think the license issue, the express or implied license is going to take care of the vast majority of those situations. Maybe there's a situation that doesn't. I think the government could make a claim of fair use, but that doesn't open the door to everybody else to come in and make copies in that situation. It's a totally different calculus of interest here. And just to wrap up, I really do think that the judgment that my friends on the other side are asking this Court to make is essentially a legislative judgment. There is a very significant longstanding system here in which regulations are incorporated by reference with an understanding that that does not extinguish their copyright status because that's the system that we have. And if that system is going to change, Congress should change it. Thank you. All right. Thank you. Mr. Chair, you used up all your time, but we'll give you five minutes. And maybe you could start out by answering Mr. Brown's argument that you're asking us to make a legislative judgment. Sure. Disrupt this system that's been in place for all these years and has enormous public benefit. I will. There's an even longer system in place in this country that respects that, and this is stated in the Boca case very nicely at page 734, that recognizes that the citizens are the authors of the law because law derives its authority from the consent of the governed. And I promise I won't quote any more after that. But I thought it animates really much of what's happening in this case. And I think that principle, as stated by the First Circuit there, animates doctrines that predated any of the national technology doctrines or any of that. It animates the edicts of government doctrine, which goes back to 1895 and arguably a good deal earlier. That states the same principle, but it limited its holding to building codes that are completely incorporated to avoid just this kind of case. But what we're arguing here is that that should be understood to extend, and its approach should be understood to extend just a tiny bit further to laws that are expressly incorporated by reference. And that's the language I want to keep coming back to. I don't mean to be a broken record about it, but it does make a difference that that's what we're talking about here. The plaintiffs in this case have made a great deal about the thousands of standards that are potentially at issue there, but that's not actually true. They create thousands of standards, and that's good for them. But it's actually a very, very tiny subset of those standards that are actually incorporated by reference into law, and many of them are now outdated as standards, which goes to the incentives question. So one of the things that the vet court did say, quoting Professor Goldstein, it's hard to imagine an area in which copyright incentives are needed less. What we have here is groups of volunteers coming together to create standards, motivated by all kinds of reasons, but mostly motivated by the idea that they're going to make the world a safer place. They come together, they volunteer their work for free, so really this is a place where copyright incentives are needed hardly at all. Last point that I don't want – I can speak to whatever you want, but I would be remiss in sitting down without pointing out the third point that I didn't have a chance to get to earlier, which is, as discussed in detail in our briefs, we're talking here about a permanent injunction against my client against sharing the law. And one of the concerns that we have in this case is we don't think that the district court did what was forbidden by eBay, which is go immediately from a finding of infringement to the conclusion that a permanent injunction was appropriate, largely ignoring the very important countervailing public interest, which we've talked about here today. And I don't think I need to restate them, but I think we have a situation here where we have a prior restraint on my client's speech, and that is of deep concern to us and I think has a very negative effect on the rest of the world, because what my client was doing was taking law that is largely inaccessible. I think the notion that the reading rooms suffice to make the law accessible, I would urge you to actually go to some of those reading rooms, or you could just go to the record, and you will find that there's all kinds of walls and barriers in between an ordinary person actually accessing the law. They're hard to find, you have to agree to a contract, you have to provide your email and all kinds of information, and then you get access to a PDF copy. Does it matter for your incorporation argument whether it was willing or consensual incorporation versus just the legislature or the executive thinking that this is a good standard so we're going to adopt it? Well, certainly what happens here is it's willing. So we have ample evidence in the record that the organizations that are part of this case actively participate and solicit having their standards incorporated by reference for a multitude of reasons, because it leads to- But if we're writing a ruling, are you saying then that we limit it then to willing incorporation versus unwilling incorporation, that that falls outside the scope of losing your copyright protection? Well, what I would urge the court to do is leave it for future courts to decide when we've crossed the line from a willing incorporation versus an unwilling incorporation. But on the facts that are presented here, we have very willing and active participation in the incorporation process. But under your theory, I thought your answer to Judge Lopez would have been it doesn't make any difference. It's the law. Well, that's certainly true, and I would take you back to what I began with, but I- So why, given your theory of this case, why would you want to leave that question open? Because that's the question that's presented on the facts of this case, and I think given that we have now four cases that have tried to tackle this issue in different kinds of ways, laundering- Are you saying that every one of the standards that were incorporated that are referred to in the summary judgment proceedings, every one of those were developed for purposes of incorporation? What I'm saying is that every one of them was expressly incorporated by reference, and what I'm also saying is that the standards organizations here actively solicit and participate in the incorporation process. And what's your view about the National Technology Transfer and Advancement Act? So that- How do we think about that? There are two points there. So one is that that act, too, that act focuses exclusively on what's happening at the federal level and not at the state and local level, as both the court talked about that distinction. And the edicts of government doctrine apply to- Why does that make a difference to the point of view of your theory of this case? Because I think one of the things that happened in the district court below was that the district court focused entirely on what went on at the federal level. And, in fact, the edicts of government doctrine goes far beyond what happens at the federal level. It applies to state, municipal ordinances, all kinds of statutes, and so on. And that brings me to my second point, which is Congress legislated against the background of the edicts of government doctrine and against the background of 102B. And I would suggest to you that the plaintiff's argument around 102B and that we can only consider 102B at the point of creation is really ignoring the fundamental fact of this case, which is that something happens when a document is made into a law. And that may happen after the time of creation, but it is still the law binding on the public. Thank you, Your Honor. Thank you. Case is submitted.
judges: Tatel, Wilkins, Katsas